**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELA SCHALALBEO | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-213 |
| | : | |
| DAMCO DISTRIBUTION SERVICES, INC., THE MAERSK GROUP, MAERSK, DCLI, DIRECT CHASSIS LINK, INC., MSC, MEDITERRANEAN SHIPPING CO. USA, HERCULES CHASSIS, HERCULES ENTERPRISES, MAERSK EQUIPMENT SERVICE, COMPANY, INC. | : : : : : : : : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                      February 24, 2023

A crane operator at the Philadelphia Port lifted a large shipping container and its attached tractor and trailer much to the tractor operator's surprise while she worked inside the tractor's cab. The crane should have lifted only the container for placement elsewhere at the Port. But the container did not separate from the tractor or its trailer. The crane operator then dropped the tractor in midair with the tractor operator inside the cab. The tractor operator now seeks recovery for her injuries alleging a variety of entities had some involvement in defective products which caused her injuries. Two of the sued entities now move to dismiss arguing Congress preempted state law liability for motor vehicle owners when their lessee negligently caused injury to a third person. So, for example, Hertz cannot be sued for vicarious liability under state law if the driver of one of its rented cars negligently injures someone. Hertz can, however, be sued under state law for its own negligence. It does not appear the tractor operator today is arguing a theory of vicarious liability against the owner entities. The tractor operator instead pleads direct liability. The tractor

operator may proceed on her strict liability claim arising from a product defect unreasonably dangerous to the user causing her harm.

I. **Alleged facts**

Angela Schalalbeo worked as a tractor operator moving shipping containers at the Port of Philadelphia Packer Avenue Marine Terminal in 2020.[1] Ms. Schalalbeo worked at the port where large vehicles and cranes loaded shipping containers onto a vessel owned by Maersk, The Maersk Group, and Damco Distribution Services, Inc.[2] Ms. Schalalbeo sat in the cab portion of the tractor which, in turn, connected to a "chassis" which, in turn, held the storage containers placed on top of it.[3]

Ms. Schalalbeo operated the tractor (by sitting in the front cab section) connected to a chassis loaded with a shipping container to be moved by crane from the chassis and onto a vessel during her November 18, 2020 shift.[4] An unidentified crane operator began to hoist the shipping container by using the crane to lift the shipping container up from the chassis to load onto the vessel. The shipping container caught onto the "trailer" or chassis resulting in the crane lifting the cab, tractor, and chassis into the air rather than the shipping container alone.[5] The tractor and chassis then suddenly disconnected while in the air causing the tractor — with Ms. Schalalbeo still inside the cab — and the chassis to crash to the ground.[6] Ms. Schalalbeo suffered severe and permanent injuries as a result of the fall requiring extensive medical treatment.[7] Ms. Schalalbeo cannot return to her job and cannot perform her usual daily activities as a result of her injuries.[8]

II. **Ms. Schalabeo sues seeking recovery for her injuries.**

Ms. Schalalbeo sued a variety of entities she believes are involved in this incident in state court alleging strict liability claims under the Restatement (Second) of Torts sections 402A, 402B. Hercules Chassis and Hercules Enterprises allegedly manufactured the chassis attached to Ms.

Schalalbeo's tractor.[9] DCLI, Maersk Equipment Service Company t/a Direct ChassisLink, Inc. and Direct ChassisLink, Inc. allegedly sold, distributed, marketed, leased, recommended, chose, selected, approved, and/or maintained the chassis for use at the Greenwich Terminal and owned and/or leased the chassis attached to Ms. Schalalbeo's tractor.[10] Damco Distribution Services, Inc., The Maersk Group, and Maersk maintained, stored, and transported shipping containers and were responsible for the condition, maintenance, and safety of the shipping container.[11] MSC and Mediterranean Shipping Co. USA owned the shipping container involved in the accident and sold, distributed, serviced, and/or maintained the shipping container.[12]

Ms. Schalalbeo asserts two claims against Direct ChassisLink, Inc. and DCLI: (1) strict liability under Restatement (Second) of Torts section 402A for owning, selling, distributing, supplying, and/or leasing a defective and unreasonably dangerous chassis; and (2) strict liability under Restatement (Second) of Torts section 402B for misrepresenting and/or failing to disclose material facts regarding the safety of the chassis.[13] Ms. Schalalbeo also seeks punitive damages for Direct ChassisLink and DCLI's conduct.[14]

Direct ChassisLink, Inc. and DCLI removed Ms. Schalalbeo's complaint invoking our diversity jurisdiction.[15] Direct ChassisLink, Inc. and DCLI later amended their Notice of removal, properly pleading the parties' citizenship.[16]

**III. Analysis**

Direct ChassisLink, Inc. and DCLI now move to dismiss Ms. Schalalbeo's complaint.[17] They argue: (1) Congress, in the Graves Amendment, preempted Ms. Schalabeo's strict liability claims; (2) Ms. Schalabeo fails to allege a misrepresentation claim under section 402B of the Restatement; and (3) Mrs. Schalabeo fails to allege facts to proceed into discovery on a punitive damages claim.[18] Ms. Schalalbeo responds the Graves Amendment does not apply to her strict

liability claim under section 402A. Ms. Schalalbeo does not contest the dismissal of section 402B and punitive damages claims.

### A. Ms. Schalalbeo pleads a strict liability theory under section 402A.

We begin with whether Ms. Schalalbeo pleads a strict liability theory before considering whether Congress preempted her strict liability claim.

Pennsylvania adopted a strict liability theory under the Restatement (Second) of Torts section 402A.[19] Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.[20]

To state a claim under a section 402A theory of strict products liability, Ms. Schalalbeo must allege: (1) a defective product; (2) the defect is the proximate cause of her injuries; and (3) the defect causing the injury existed at the time the product left the seller's hands.[21]

Pennsylvania also adopted section 402B of the Restatement (Second) of Torts.[22] Section 402B provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
> (a) it is not made fraudulently or negligently, and
> (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.[23]

4

Section 402B applies to misrepresentations of "material facts" and only where there is "justifiable reliance" on the misrepresentation.[24]

Ms. Schalalbeo alleges a defective chassis, the defect is the proximate cause of her injuries, and the defect in the chassis causing her injuries existed at the time the chassis left Direct ChassisLink and DCLI's hands. She sufficiently pleads a claim Direct ChassisLink and DCLI are liable in strict products liability under section 402A of the Restatement.

**B.  Congress did not preempt Ms. Schalalbeo's section 402A claims**.

Direct ChassisLink and DCLI's principal argument is the Graves Amendment bars Ms. Schalalbeo's strict liability claim as a matter of law. They argue we must dismiss because: (1) a chassis is a "motor vehicle" as defined by the Graves Amendment; (2) Ms. Schalalbeo alleges Direct ChassisLink and DCLI "owned, sold, distributed, supplied and/or leased the subject chassis"; (3) Ms. Schalalbeo alleges her personal injury resulted from the use, operation, or possession of the chassis during the period of the lease; and (4) Ms. Schalalbeo does not allege negligence against Direct ChassisLink and DCLI which the Graves Amendment would not preempt.

Ms. Schalalbeo responds the Graves Amendment does not apply because she is not asserting a vicarious liability claim against Direct ChassisLink and DCLI; rather, she asserts a products liability claim against Direct ChassisLink and DCLI for supplying a defective product.

We begin with the understanding of how Congress in the Graves Amendment may preempt a state law vicarious liability claim against an owner or lessor of a motor vehicle for the torts of its lessee if liability is not premised on the owner/lessors' fault or negligence. Congress in the Graves Amendment provides:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by

5

reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).[25]

Legislative history confirms Congress intended the Graves Amendment apply to vicarious liability claims. The legislative history undercuts Direct ChassisLink and DCLI's argument the Graves Amendment preempts Ms. Shalalbeo's strict products liability claim at this stage.

Representative Sam Graves proposed an amendment in 2005 adopted by Congress to the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users.[26] Representative Graves argued reforming vicarious liability in the "car and truck renting and leasing industry" will establish a national standard and "restore fair competition to the car and truck renting and leasing industry and lower costs and increase choices for all consumers."[27] The amendment did not "absolv[e] [rental car] companies of liability if they are at fault."[28] The amendment instead "eliminat[ed] vicarious liability simply because they own the vehicle."[29] Representative Graves later emphasized rental companies "should be liable for . . . their negligence or *for their equipment*, but they should not be liable for the action of their drivers" and Representative Graves emphasized "let us be very, very clear on this, this proposal *would not exempt rental and leasing companies from the liability involved with their equipment*. They are still liable and should be liable for negligence *when it deals with their equipment*, but they should not be liable for the actions of drivers."[30]

We agree with Ms. Schalalbeo the Graves Amendment does not apply here where the claims against Direct ChassisLink and DCLI are ***not*** based on a vicarious liability theory. Ms. Schalalbeo alleges the Direct ChassisLink and DCLI "owned, sold, distributed, supplied and/or

6

leased the subject chassis in the ordinary course" of its businesses; were responsible for the condition, maintenance, and safety of the chassis; placed the defective and unreasonably dangerous chassis in the stream of commerce, including a defective warning system Direct ChassisLink and DCLI knew or should have known; and Direct ChassisLink and DCLI, despite knowing the defective and dangerous condition of the chassis, designed, distributed, marketed, serviced, maintained, and/or sold the chassis without correcting and/or warning of the known defects and dangerous condition.[31] Ms. Schalalbeo does not base liability solely on the Direct ChassisLink and DCLI's ownership in the chassis; she instead bases liability on the Direct ChassisLink and DCLI's placement of an alleged defective and dangerous chassis in the stream of commerce.

The Direct ChassisLink and DLCI do not cite a judge ever dismissing a strict liability claim based on the preemptive effect of the Graves Amendment. The cases Direct ChassisLink and DCLI cite arise in the context of summary judgment on claims based on a defendant's ownership interest only. For example, in *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, Judge Vanaskie granted summary judgment dismissing a claim seeking to hold a U-Haul company liable for the negligent performance of its lessee's maintenance and repair responsibilities.[32] In *Knect v. Balanescu*, Magistrate Judge Mehalchick granted summary judgment to a defendant on a negligent entrustment theory.[33] Judge Mehalchick reasoned although the Graves Amendment cannot be read to exclude claims of negligent entrustment "when the facts giving rise to negligent acts of the lessor pose an unreasonable risk of harm to others," there is no duty under Pennsylvania law imposed upon lessors to investigate driver records unless the lessor affirmatively assumes responsibility from the lessee.[34] And, based on the summary judgment record before her, Judge Mehalchick found the lease provision between the defendant lessor and the lessee vested responsibility of driver credentials in the lessee, not the lessor.[35] Based on those facts, Judge

7

Mehalchick found the Graves Amendment preempted the negligent entrustment claim and entered summary judgment for the lessor.[36]

In *Holder v. Suarez*, Judge Caputo dismissed vicarious liability claims as preempted by the Graves Amendment based on the summary judgment record.[37] Judge Caputo found the lessor of a chassis had a duty to maintain it "even if done through representatives."[38] Unlike Judge Vanaskie in *Buzzerd*, Judge Caputo found a duty on the lessor but granted summary judgment because nothing in the record demonstrated the lessor breached its duty in negligence and applied the Graves Amendment.[39] But this fact pattern is vastly different than Ms. Schalalbeo's allegations.

Ms. Schalalbeo does not allege Direct ChassisLink and DCLI are vicariously liable for the negligent acts of their lessees based on their status as owner or lessor of the chassis. Ms. Schalalbeo asserts theories of strict liability against Direct ChassisLink and DCLI. Her claims as pleaded are outside the Graves Amendment.

### C.  We dismiss the section 402B and punitive damages claims without prejudice.

Ms. Schalalbeo responded to the Motion to dismiss by withdrawing her section 402B and punitive damages claims.[40] She asks we dismiss those claims without prejudice for her to amend her complaint to add the Section 402B and punitive damages claims if warranted under Federal Rule 15. We dismiss Ms. Schalalbeo's section 402B claim and her demand for punitive damages.

### IV.  Conclusion

We deny Direct ChassisLink and DCLI's motion to dismiss Ms. Schalalbeo's section 402A claim. We dismiss Ms. Schalalbeo's section 402B claim as well as her demand for punitive damages upon consent and without prejudice.

---

[1] ECF Doc. No. 11–1 ¶ 21. Ms. Schalalbeo alleges she sustained injury at the "Greenwhich [sic] Terminal." As we understand it, there is no "Greenwhich Terminal" as alleged by Ms. Schalalbeo. An entity known as Greenwich Terminal, LLC is the operator of the Port of Philadelphia's Packer

8

Avenue Marine Terminal. *See* https://www.philaport.com/facilities/packer-avenue-marine-terminal/ (last visited February 22, 2023). There are other public terminals at multiple piers and terminal complexes operated by other entities, but we understand Greenwich Terminals, LLC operates the Packer Avenue Marine Terminal. https://www.philaport.com/services/terminal-operators/ (last visited February 22, 2023).

According to its website, the Port of Philadelphia's Packer Avenue Terminal is a 160-acre facility with berths for ships, refrigerated and dry warehouses, super-cranes to lift shipping containers on and off ships, and other equipment to move shipping containers on and off ships. https://www.philaport.com/facilities/packer-avenue-marine-terminal/ (last visited February 22, 2023). The Port of Philadelphia promotes its Packer Avenue Marine Terminal as "the premier container handling facility on the Delaware River" with "immediate access to two major rail yards and interstate highways." *Id.*

[2] ECF Doc. No. 11–1 ¶¶ 5, 14.

[3] There are various terms used in Ms. Schalalbeo's complaint appearing to have a specific use in the shipping industry giving us context:

- A "container" is defined as "[a] box made of aluminum, steel, or fiberglass used to transport cargo by ship, rail, truck or barge. … In the container industry, containers are usually simply called boxes."

- A "chassis" or "container chassis" is "[a] piece of equipment specifically designed for the movement of containers by highway to and from container terminals."

- A "terminal" is "[t]he place where cargo is handled," also called a "wharf."

- A "terminal operator" is "[t]he company that operates cargo handling activities on a wharf. A terminal operator oversees unloading cargo from ship to dock, checking the quantity of cargoes versus the ship's manifest (list of goods), transferring of the cargo into the shed, checking documents authorizing a trucker to pick up cargo, overseeing the loading/unloading of railroad cars, etc."

- A "tractor-trailer" is explained: "Some trucks are a solid unit, such as a van, but many have three main units. The front section where the driver sits is called the cab or the tractor (because it pulls a load). Cargo is loaded into the metal box (container), which is loaded onto the wheel base called a chassis or a trailer. These big trucks are often also called 18-wheelers."

- A "vessel" is a "ship or large boat."

*See* American Association of Port Authorities, Glossary of Maritime Terms, https://www.aapa-ports.org/advocating/content.aspx?ItemNumber=21500 (last visited February 23, 2023).

[4] ECF Doc. No. 11–1 ¶¶ 21–24.

9

[5] *Id.* ¶¶ 23–24. We assume a "trailer" is the same as a "chassis" as Ms. Schalabeo also used in paragraph 23 of her Complaint.

[6] *Id.* at ¶ 24.

[7] *Id.* ¶¶ 26–29.

[8] *Id.* ¶¶ 30–33.

[9] *Id.* ¶¶ 17–18, 103.

[10] *Id.* ¶¶ 19–20, 79.

[11] *Id.* ¶¶ 5, 13, 36.

[12] *Id.* ¶¶ 15–16, 56.

[13] Direct ChassisLink and DCLI's Motion and Ms. Schalalbeo's response refers to Restatement (Second) of Torts Section 403B. *See* ECF Doc. No. 3 at 2, 3–2 at 2, 8; ECF Doc. No. 18 at 3. We assume this is a typographical error. Ms. Schalalbeo alleges the entities violated section 402B of the Restatement, *not* section 403B.

[14] ECF Doc. No. 11–1 at Counts V, VI Wherefore clause.

[15] ECF Doc. No. 1.

[16] ECF Doc. Nos. 11, 15.

[17] ECF Doc. No. 3. Mediterranean Shipping Company S.A. and Mediterranean Shipping Co. USA ("MSC Defendants") answered the complaint and asserted crossclaims against the other Defendants. ECF Doc. No. 16. The remaining Defendants responded to Ms. Schalalbeo's complaint by filing preliminary objections in the Philadelphia County Court of Common Pleas. They have not participated to date in this Court.

[18] ECF Doc No 3-2. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp.*

---

*Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[19] *Webb v. Zern*, 220 A.2d 853 (Pa. 1966); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014).

[20] Restatement (Second) of Torts § 402A (1965).

[21] *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 710 (3d Cir. 2018).

[22] *Klages v. Gen. Ordnance Equip. Corp.*, 367 A.2d 304 (Pa. Super. Ct. 1976).

[23] Restatement (Second) of Torts § 402B (1965).

[24] *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 573 (E.D. Pa. 2011) (citing Restatement (Second) of Torts § 402B, cmts. g, j).

[25] 49 U.S.C. § 30106(a).

[26] *See* Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109-59, 119 Stat. 1114 (2005).

[27] 151 Cong. Rec. H1034-01, *H1200, 2005 WL 556038 (Mar. 9, 2005).

[28] *Id.* at *H1201.

[29] *Id*.

[30] *Id*. at *H1202 (emphasis added).

[31] ECF Doc. No. 11–1 ¶¶ 78–92.

[32] No. 06-981, 2009 WL 10685457, at *2–*3 (M.D. Pa. Sept. 28, 2009).

[33] No. 16-549, 2017 WL 4573796, at *11 (M.D. Pa. Oct. 13, 2017).

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] No. 14-1789, 2016 WL 593620 (M.D. Pa. Feb. 12, 2016).

[38] *Id.* at *16.

[39] *Id.* at *16–*17.

[40] ECF Doc. No. 18.